DORÉ, Judge.
In this suit, plaintiff seeks to recover the sum of $1,116.10 from the defendants Southern Drive-In Theatres Inc., the Trinity Universal Ins. Co., Gulf Insurance *217 Company and Houston Fire & Casualty Insurance Co., in solido, based on the following allegations:
Plaintiff alleges that under an oral contract entered into with T. H. Cook, a representative of the said named defendant insurance companies, and Louis J. Michot, Jr., president and general manager of the said defendant Theatres, Incorporated, he sold and delivered to the said defendant parties, on premises described in his petition, certain materials and 'furnished labor to the amount of $1,11.6.10; that, after having made demand several times for the payment of balance due, he executed an affidavit under date of March 16, 1949, before a Notary Public, which affidavit was recorded in the Mortgage Records of Iberia Parish; that thereby he has a materialman’s and a laborer’s lien and privilege upon the property described in his petition; that he has made amicable demand upon the defendants for payment of the amount claimed to’ no avail.
The defendants filed exceptions to the jurisdiction ratione personae, which exceptions were overruled. These exceptions are not urged in this court and are treated as abandoned.
Thereafter, defendant Southern Drive-In Theatres,. Inc. filed an answer in which, after admitting its corporate name and demand made upon it and denied, it made a general denial of the plaintiff’s allegations. In further answer, it averred that in November, 1948,. it was the operator, under lease, of a drive-in theatre known as the “Iberia Drive-In Theatre”, located on the Abbeville Highway, four miles west of New Iberia; that in November, 1948, a windstorm knocked the screen structure of the said drive-in theatre to the ground, the said structure of the screen remaining unbroken and intact; that it, through Louis J. Michot, its president, engaged the services of the plaintiff 'for the purpose of raising the screen to its upright position, at a cost not exceeding $500 which was to include any and all labor or materials used in connection with said work; that during December, 1948, pursuant to said agreement, plaintiff attempted, with the use oí trucks, to raise the said picture screen, and in such attempt, ■plaintiff negligently and carelessly allowed the said picture screen to drop forcefully to the ground, breaking- the structure of the screen so- that the same could not be erected without being rebuilt; .that thereupon plaintiff advised defendant that he would dismantle said picture screen and rebuild it in an erect position, as he was required to do- under the said agreement with it.
It further avers that after considerable delays, plaintiff, with the help oí two carpenters and with materials purchased from Indes Lumber Company of New Iberia, began the work of rebuilding the said screen; and when the said screen was approximately one-half completed and in an unfinished state, a windstorm knocked it down again; and that plaintiff, since that time has never attempted to complete the work which he undertook to do; that after several months’ delay during which it attempted to have plaintiff complete the work as agreed but to no avail, it was compelled to engage another contractor who constructed the said screen in an efficient and workman-like manner, at a- cost of $400 to the contractor, and using the materials obtainéd from the Indes Lumber Company, to the amount of $312, which it paid to the said lumber company.
The -answer of the defendant insurance companies is likewise a general denial. In further answer, they make practically the same averments as.contained in the answer of their co-defendant Theatres, Inc. They categorically denied that T. H. Cook contracted with plaintiff, in any wise, to do any repair work on the screen structure; they aver that they paid Theatres, Inc. the sum of $1,115.19, it being the total amount of damages caused by the storms to the screen structure and other structures. In the alternative, they denied the authority o-f Cook to enter into a binding contract between the plaintiff and the defendants.
Upon these issues, the case was tried, resulting in a judgment in favor of plaintiff and against the defendant Southern Drive-In Theatres, Inc., in the sum of $803.75 with legal interest from judicial demand until paid,.and in 'favor of the de *218 fendant insurance companies and against plaintiff, dismissing his suit against them. Defendant Theatres, Inc. has appealed.
In this court, the plaintiff-appellee filed a motion to dismiss the appeal on the ground and for the reason that no final judgment has been signed in this matter.
We find no merit in the motion. In the record, we find that on October 9, 1951 the trial judge handed down written reasons for his judgment. At the conclusion of his reasons for judgment we find the following:
“For these reasons therefore let there be judgment in favor of plaintiff and against the defendant, Southern Drive-In Theatres, Inc. in the amount of $803.75 with legal interest thereon from date of judicial demand until paid, and in favor of the defendants, Trinity Universal Insurance Company, Gulf Insurance Company, and Houston Fire & Casualty Insurance Company and against the plaintiff dismissing his action against them.
“Rendered in Open Court at New Iberia, Parish of Iberia, State of Louisiana, this 9th Day of October, 1951.”
“Signed: S. O. Landry,
“Judge, 16th Judicial District
Court.”
In the extract of the minutes of date of October 9, 1951, there appears a minute entry of the decree in the words and phrases as above set out.
Although the decree does not set out that it was read aloud and signed in open court, it must be presumed that the presiding judge followed the law in that regard. We are of the opinion that the decree is sufficient as a signed judgment. The motion is overruled.
Since the Theatres Incorporated is the only appellant before this court, plaintiff having failed to appeal from that part o'f the judgment dismissing his demand against the insurance companies, that part of plaintiff’s case against the insurance companies is not before this court and has passed out of the case.
In November, 1948, the Southern Drive-In Theatres, Inc., was operating a drive-in theatre about four miles south of New Iberia, on the New Iberia-Abbeville paved highway. It carried windstorm insurance on its screen structure, equipment and fence with the three defendant insurance companies, through their local agent, De-rouren Insurance Agency, at New Iberia, Louisiana.
On the night of November 18, 1948, a windstorm knocked the screen structure or tower of said theatre to the ground and damaged the fence enclosing the said theatre and its loud speaker; but the screen structure or tower remained unbroken and intact.
Shortly thereafter, Mr. T. H. Cook, an insurance adjuster and the Lafayette branch manager of the General Adjustment Bureau, contacted the plaintiff with the view of having him make the necessary repairs. Likewise, it appears that independently of Mr. Cook, Mr. Louis Michot, Jr., the President of defendant Theatres, Inc., sought out the plaintiff to engage him to repair the damage.
It was suggested by both Cook and Michot, to which suggestion plaintiff agreed, that an attempt be made to raise the screen structure by the use of winches and trucks, and while so doing the screen structure was dropped and fell to the ground, breaking the structure of the screen so that it had to be rebuilt. Plaintiff then proceeded to dismantle the structure, salvage such material as possible, purchase new material, furnish the labor and re-erect the screen structure.
Sixty days after the screen structure had been blown down, the damages to the fence had been repaired and the screen structure had been re-erected. Originally, the screen structure had no guy wires to hold it erect. It had previously been agreed to by Mr. Michot and plaintiff that plaintiff was to install guy wires on the new screen; that was apparently all that remained to be done at about 11:00 a. m. on January 18, 1949, when a windstorm again blew down the screen.
The guy lines were not installed, plaintiff contending that Theatres, Inc. was to furnish them and failed to do so, while defendant Theatres, Inc. contended that it was the duty and obligation of plaintiff to fur *219 nish the guy lines and install them. Nevertheless, plaintiff refused to go any further, but did furnish labor to dismantle all the materials in the screen structure and pull out the nails, which labor, to the -amount of $80, was paid by plaintiff.
Thereafter, Theatres, Inc. then hired a contractor at a charge of $125 and $300 to carpenters to re-erect the screen structure.
The record -discloses that plaintiff paid $696.75 for labor, and $32 for rent on winches and truck in the erection of the screen structure prior to the second storm, and the sum of $80 for labor in dismantling the structure and in pulling off nails after the second storm, or a total of $803.75, the amount allowed by the trial judge.
It is defendant Theatre, Inc.’s contention agreement had between himself and the parties concerned, that is the Theatres, Inc. and Cook, was that he was to undertake the re-erection of the screen structure in its former condition, which he fully carried out prior to the second storm; that he was to be paid not by the job but by the hour or day, that is the costs of the labor and material; that the subsequent agreement only involved the furnishing and installing of guy lines; that he had completed his contract with Theatres, Inc. and Cook prior to the second storm, and that the damage resulting from the second storm was due to the failure of Theatres Inc. in not timely furnishing to him the necessary guy lines to be installed.
It is defendant Theatres, Inc.’s contention that plaintiff had agreed to do this work for an amount not exceeding $500 and that the work had not been completed when the second windstorm struck. The liability for rebuilding the structure was therefore plaintiff’s and plaintiff having failed to discharge it, the loss the Theatres, Inc. incurred in having to re-erect the screen structure at its own expense was greater than $500 and therefore it owes plaintiff nothing.
The testimony of the .interested parties, that is, plaintiff and Mr. Michot, President of Theatres, Inc., is in line with their contentions. It can readily be seen that there is a hopeless conflict. With regard thereto, we deem it sufficient to quote the reasons given by the trial judge; thusly:
“Whether or not the screen had been completely erected the second time it was blown down is rather difficult to determine. This is so because when it was first erected it had no guy wires to hold it up. When plaintiff undertook the repair job he was apparently instructed by Mr. Cook to put the screen back in its original condition. Whatever the cost of this work would amount to the insurance companies apparently would bear.
“During the course of construction it was agreed between plaintiff and Mr. Michot that guy lines would be installed. This would be an improvement to the screen and the cost thereof was understood to be borne by Mr. Michot. Mr. Michot agreed to furnish the guy wires and although plaintiff stated that he was ready to install them and had been waiting for Mr. Michot to bring them, Mr. Michot had not brought them at the time of the second storm.
“Therefore, in so far as the transaction with Mr. Cook was concerned, and as concerns the -insurance companies, the job was completed. But in so far as the agreement with Mr. Michot is concerned, concerning the guy wires, they were not up and therefore the job was not completed.”
* * * * * *
“ * * * The claim -as itemized in plaintiff’s affidavit for the filing of his lien shows that it is principally for labor furnished between December 1, to the date of the second- windstorm on January 18, 1949. The portion that covers the labor that Mr. Micho-t.used to dismantle the screen -after the second windstorm is relatively small when compared to the total hours of these workmen. In addition to these two items the only other claim is' in the amount of $32.00 for the truck 'that attempted to raise the screen after the first storm.”
******
*220 “Its claim that plaintiff agreed to do this work for less than $500.00 is not tenable. This claim is based on what is commonly known as a “turn-key job.” It supposes a contract to deliver the job in a finished state. Clearly, there is no evidence that such an agreement was ever made. The only evidence o'f this agreement is in Mr. Michot’s testimony. It is clearly denied by the plaintiff.
“Plaintiff is uneducated and is a carpenter who has a few men working with him. It does not seem that he could undertake jobs where close estimates of material and labor must be first had before a -price can be given for the completed job. He and his men work by the hour at a fixed rate. To this cost he' adds the cost of the material which is kept by the furnisher of them.
“It could then be hardly conceivable that the agreement between the defendant corporation and the plaintiff was that he should complete tire work for $500.00 or less. It is apparently customary that when jobs are let on such a basis, some sort of documents are kept to reflect the agreement. It is also quite evident that the job iwould greatly exceed this amount and if plaintiff had undertaken it -at that price, he would have lost considerably.
“Defendant corporation’s other defense is likewise untenable. That defense is that the work had not been completed and that under the provisions of our law, particularly Article 2758 of our Civil Code, the loss incurred was plaintiff’s because the work was unfinished.
“It is evident for the reasons above stated that the job was not a “turn-key job” as this law contemplates. It is natural to provide that when such construction is undertaken that until delivery is made thereof the work remains at the risk of the contractor. It is not the case, however, when one works by the hour.
“Also, from the evidence we must conclude that in so far as plaintiff’s undertaking was concerned, he had -done all he should and could have done to finish the work. All that remained was to install the guy wires which Mr. Michot were to furnish. As long as Mr. Michot did not furnish this item plaintiff could not complete the job.
"Therefore, the means of completing the work was under the control of Mr. Michot, not plaintiff, and as long as Mr. Michot did not bring the material for the completion of the work, certainly the blame therefor cannot be placed on plaintiff.
“The defendant corporation also claims that plaintiff had not replaced timbers that had been buried some depth in the ground when the screen was originally constructed. There is contradiction in the evidence regarding how deep these timbers were buried. Plaintiff claims that he rebuilt the screen identically as it was originally and that he buried timbers as deeply as they originally were. Under these circumstances it is difficult to determine who is correct. That fact is unimportant, however, because Mr. Michot does not claim that had the timbers been driven as before, the second windstorm would not have toppled the screen. It therefore makes no difference as the second damages would have occurred just the same.”
After a thorough consideration of this record, we cannot point to any reversible error committed by the trial judge. To the contrary, the record justifies his conclusion. The plaintiff is corroborated in several instances, particularly in that the materials.purchased by him were billed by the lumber company to the Derouen Insurance Agency, the local insurance agents of defendant insurance companies. Another significant fact is that after the second storm, the adjuster considered the damages done by the first storm to the screen structure to be total, and estimated such damage to the amount of $954.35 and *221 $50 to the 'fence, or a total of $1,004.35, and used such figures in the Theatres, Inc.’s proof of loss. It is also noted that plaintiff paid $80 as wages arising out of the second storm, making a total of $1,0-84.35; deducting the $312.35, the material bill paid by Theatres, Inc., from this sum, leaves the sum of $772, which is nearly what plaintiff is claiming, and which goes to show that plaintiff’s claim is not unreasonable.
Finding no error committed by the trial judge, the judgment appealed from is affirmed.